[No. A131025. First Dist., Div. Five. Feb. 16, 2012.]

LENA AJAMIAN, Plaintiff and Respondent, v.
CANTORCO2e, L.P., et al., Defendants and Appellants.

COUNSEL

Curley, Hessinger & Johnsrud, Brian L. Johnsrud and Patrick M. Sherman for Defendants and Appellants.

Charles H. Jung, Kassra P. Nassiri and Andrew R. Kislik for Plaintiffs and Respondents.

OPINION

**NEEDHAM, J.**—CantorCO2e, L.P., and Joshua Margolis appeal from an order denying their petition to compel arbitration of respondent's claims under the Federal Arbitration Act. (9 U.S.C. §§ 1–16.) They contend (1) the arbitration panel, rather than the court, should have decided whether the arbitration provision in respondent's employment agreement was unconscionable; (2) respondent failed to establish that the arbitration provision was unconscionable, and any unconscionable portion of the provision should have been severed to permit the arbitration to proceed; and (3) alternatively, arbitration should have been compelled under the terms of an employee handbook.

We will affirm the order. Although the arbitration provision was broadly worded and indicated that arbitration might be conducted under the rules of an arbitration service that gives arbitrators the power to decide the validity of arbitration agreements, it did not provide clear and unmistakable evidence that the parties intended to delegate authority to the arbitrator, rather than to the court, to decide the threshold issue of whether the arbitration provision itself was unconscionable. The unconscionability issue was therefore for the court to decide. Furthermore, the provision was procedurally unconscionable and substantively unconscionable in more than one respect, such that the court did not abuse its discretion in concluding that the provision could not be saved by severing the offending terms. In addition, appellants failed to establish that arbitration should have been compelled under the employee handbook.

## I. FACTS AND PROCEDURAL HISTORY

Appellant Joshua Margolis is chief executive officer of appellant CantorCO2e, L.P. (CantorCO2e). In September 2006, CantorCO2e hired respondent Lena Ajamian as its San Francisco office manager.

## A. Employee Handbook

In September 2006, Ajamian signed an annual acknowledgement and certification form, by which she acknowledged that she had read the Cantor Fitzgerald and eSpeed Policies and Procedures Manual.[1] Ajamian avers, however, that she signed this form with the understanding that it referred to an online compliance manual, and she had not seen the policies and procedures manual when she signed the acknowledgement.

The policies and procedures manual is a 65-page document that includes an employee handbook containing, among many other things, a section entitled "Arbitration Agreement and Policy"; a form by which the employee is to confirm receipt of the handbook and acknowledge that claims and disputes pertaining to its policies are subject to arbitration; an arbitration agreement and policy, containing a line for the employee's signature; and a confidentiality agreement and exhibits. Ajamian did not sign the acknowledgement of her receipt of the employee handbook and agreement to arbitrate. Nor did she sign the arbitration agreement and policy.

The Arbitration Agreement and Policy provides that disputes "shall be submitted to and finally determined before a panel of arbitrators according to the American Arbitration Association's ('AAA') National Rules for the Resolution of Employment Disputes then in effect." It provides further, however, that where the employee and CantorCO2e have entered into a written employment agreement containing an arbitration provision, "the arbitration of any disputes" shall be "as set forth in [the] written employment agreement."[2]

## B. Promotion to Broker and Employment Agreement

In March 2007, Margolis promoted Ajamian from office manager to broker. In connection with her position as broker, she received and eventually signed an employment agreement containing an arbitration clause.

### 1. Employment Agreement

By June 2007, CantorCO2e provided Ajamian a proposed employment agreement that set forth the terms of her employment as a broker (Employment Agreement). The Employment Agreement raised Ajamian's annual base salary

[1] Appellants' counsel explained at oral argument that CantorCO2e was an affiliate of Cantor Fitzgerald, L.P., and eSpeed has been renamed CantorCO2e, such that the policies and procedure manual applied to Ajamian.

[2] The parties, in referring to the "Handbook," seem to mean the policies and procedure manual as a whole, not just the employee handbook contained therein. Hereafter, so shall we.

by approximately $20,000, indicated her eligibility to earn a discretionary bonus, and included a fixed term of employment for a minimum of two years.

Section 8 of the Employment Agreement sets forth an arbitration clause. It provides in part: "Any disputes, differences or controversies arising under this Agreement shall be settled and finally determined by arbitration before a panel of three arbitrators in New York, New York, according to the rules of the National Association of Securities Dealers, Inc. (or, at [CantorCO2e's] sole discretion, the American Arbitration Association or any other alternative dispute resolution organization) now in force and hereafter adopted and the laws of the state of New York then in effect."

The arbitration clause goes on to limit the relief that the parties, particularly the employee, may obtain: "The arbitrators shall make their award in accordance with and based upon all provisions of this Agreement[,] and judgment upon any award rendered by the arbitrators shall be entered in any court having jurisdiction thereof. However, it is understood and agreed that the arbitrators are not authorized or entitled to include as part of any award rendered by them, special, exemplary, punitive or statutory double (or other multiple) damages or amounts in the nature of special, exemplary, punitive or statutory double (or other multiple) damages regardless of the nature or form of the claim or grievance that has been submitted to arbitration, except that the arbitrators shall be authorized and entitled to include as part of any award rendered by them in favor of [CantorCO2e] Liquidated Damages (as herein defined) provided for in this Agreement."

Section 8 of the Employment Agreement further provides: "It is expressly agreed that arbitration as provided herein shall be the exclusive means for determination of all matters arising in connection with this Agreement and neither party hereto shall institute any action or proceeding in any court of law or equity other than to request enforcement of the arbitrators' award hereunder. The foregoing sentence shall be a bona fide defense to any action or proceeding instituted contrary to this Agreement."

Notwithstanding the arbitration clause, section 11 of the Employment Agreement anticipates that a court may make certain determinations: "In the event that an arbitration panel *or court of competent jurisdiction* shall determine that any covenant set forth in this Agreement is impermissibly broad in scope, duration or geographical area, or is in the nature of a penalty, then the parties intend that such panel or court should limit the scope, duration or geographical area of such covenant or reduce the amount of Liquidated Damages to the extent, and only to the extent, necessary to render such covenant reasonable and enforceable, and enforce the covenant as so limited." (Italics added.)

In addition, section 11 of the Employment Agreement provides that, at least in certain instances, the employee may be liable for CantorCO2e's attorney fees: "Employee agrees that if Employee brings an action, claim or proceeding against [CantorCO2e] . . . that relates to or implicates this Agreement, whether as to its validity, efficacy or otherwise, in the event that any of such Parties should prevail in such action, Employee shall pay the reasonable attorney's fees of such Party or Parties."

### 2. *Execution of the Employment Agreement Without Negotiation*

Ajamian told Margolis that she wanted to have the Employment Agreement reviewed by a lawyer, and he replied that was not a problem. It appears Ajamian had an attorney review the Employment Agreement on or about June 20, 2007.

Ajamian signed the Employment Agreement about six months later in December 2007. It is undisputed that the Employment Agreement was not the product of negotiation. As to how that came about, however, Ajamian and Margolis have different recollections.

According to Margolis, the Employment Agreement was not presented to Ajamian on a take-it-or-leave-it basis and she was never told it was nonnegotiable. Nonetheless, Ajamian never mentioned the arbitration clause to Margolis or attempted to negotiate it; nor did Ajamian's lawyer contact Margolis to negotiate the terms or send proposed revisions. Furthermore, Margolis never coerced or even required Ajamian to sign the Employment Agreement, although he did inform her that she would need to sign an Employment Agreement if she wanted to be a broker, earn the higher salary and bonus, and receive "greater job security." Once Ajamian finally signed the Employment Agreement, she appeared happy about its financial terms.[3]

According to Ajamian, on the other hand, she told Margolis that she "wanted to cross out the arbitration agreement and a number of other sections" of the Employment Agreement and make the Employment Agreement provide for California law instead of New York law. Margolis replied that the company would not consider those changes and she would have to sign the Employment Agreement as is by December 31, 2007, if she wanted

---

[3] Appellants' opening brief represents that Ajamian told Margolis she was happy with the "Employment Agreement." The paragraph they cite in Margolis's declaration states: "Ajamian told me she was happy with the *bonus, higher salary*, and the *employment security provided by* the Employment Agreement." (Italics added.)

her bonus and salary increase. Ajamian told Margolis that she felt uncomfortable signing the Employment Agreement, but when he said she had to sign it in order to receive her bonus and salary increase, she felt she had no choice and reluctantly signed it. Ajamian did not request any changes after Margolis said she had to sign it, because she understood from Margolis's statements that no changes would be permitted and he would look unfavorably on any such request.

## C. *Termination of Employment Agreement*

On August 31, 2009, CantorCO2e provided written notice, pursuant to section 1 of the Employment Agreement, of its intent to terminate the Employment Agreement effective March 1, 2010.

Pursuant to section 4 of the Employment Agreement, on March 1, 2010, Ajamian remained in the employ of CantorCO2e as an at-will employee, the Employment Agreement no longer governed her employment, and "the terms of [her] employment, including, but not limited to [her] compensation, [were] governed by Company's policies then in effect . . . ." By that time, Ajamian acknowledges, she had seen the handbook, which sets forth certain policies, including the company's arbitration policy. As mentioned, the Arbitration Agreement and Policy provides that disputes "shall be submitted to and finally determined before a panel of arbitrators according to the American Arbitration Association's ('AAA') National Rules for the Resolution of Employment Disputes then in effect."

Ajamian's employment with CantorCO2e ended April 16, 2010.

## D. *Ajamian's Lawsuit*

On September 8, 2010, Ajamian filed a complaint against appellants, asserting claims for sexual discrimination, sexual harassment, retaliation, failure to pay overtime (Lab. Code, §§ 510, 558), failure to provide rest breaks and meal breaks (Lab. Code, § 226.7), failure to keep accurate records or to provide required pay stubs (Lab. Code, §§ 226, 226.3, 1174), failure to pay Ajamian all amounts due to her upon termination, and violation of Business and Professions Code section 17200. Some or all of these claims pertain to the time period from the commencement of her employment through her final termination date of April 16, 2010—in other words, before, during and after the effective dates of the Employment Agreement.

In response to the complaint, CantorCO2e's attorney sent Ajamian's attorney a letter requesting that Ajamian stay or dismiss her lawsuit and submit the matter to binding arbitration before the American Arbitration Association (AAA). Ajamian's attorney replied that Ajamian would not agree to arbitrate because she did not sign the arbitration agreement included in the handbook and both that arbitration provision and the arbitration provision in the Employment Agreement were unconscionable.

### 1. *Appellants' Petition to Compel Arbitration*

CantorCO2e and Margolis filed a petition to compel arbitration pursuant to the terms of the Employment Agreement or, alternatively, the handbook. They contended, as they do here, that the question of the enforceability of the arbitration provision should be decided by the arbitrator, Ajamian could not establish procedural unconscionability, and any provisions that were substantively unconscionable could simply be severed.

Ajamian opposed the petition, contending that the court rather than the arbitrator was required to determine the issue and the arbitration provisions were unconscionable. In addition, she argued that, even if there were a clear and unmistakable delegation of authority to the arbitrator to decide the enforceability of the arbitration provision, such a delegation is itself unconscionable and unenforceable.

### 2. *Trial Court's Denial of Petition*

The court denied the petition to compel arbitration. By written order dated December 20, 2010, the court ruled (1) Ajamian is not bound by the arbitration provision in the handbook; (2) the court, rather than the arbitration panel, determines whether the arbitration provision of the Employment Agreement is enforceable; (3) the arbitration clause in the Employment Agreement is unconscionable; (4) the damages limitation in the arbitration provision of the Employment Agreement is unlawful and "the attorneys' fee clause which the arbitration provision in the Employment Agreement would enforce is unconscionable"; and (5) the court would not sever the offending portions of the arbitration provision in order to save it.

This appeal followed.

## II. DISCUSSION

Under federal as well as California law, there is a strong public policy favoring arbitration, but an accompanying foundational precept that claims should be arbitrated only to the extent the parties have agreed. (*Granite Rock*

*Co. v. Teamsters* (2010) 561 U.S. \_\_\_, \_\_\_, \_\_\_–\_\_\_ [177 L.Ed.2d 567, 130 S.Ct. 2847, 2856, 2859–2860] (*Granite Rock*).) To this end, arbitration agreements are valid, irrevocable, and enforceable, except upon grounds that exist for the revocation of a contract generally. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97–99, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).) One such ground is that the arbitration agreement is unconscionable. (*Ibid.*)

Appellants contend the court erred in denying the petition to compel arbitration on the ground of unconscionability. As mentioned, they urge (1) the court should not have decided the issue, because the Employment Agreement delegated the determination of Ajamian's unconscionability contentions to the arbitration panel; (2) Ajamian did not establish that the arbitration provision was procedurally or substantively unconscionable; and (3) even if arbitration could not be compelled under the Employment Agreement, it should have been compelled under the arbitration provision in the Handbook. We address each contention in turn.

A. *Who Should Decide Whether the Arbitration Agreement Is Unconscionable?*

Under the Federal Arbitration Act (FAA), title 9 United States Code sections 1 to 16, the enforceability of an arbitration agreement is ordinarily to be determined by the court.[4] The parties may agree in the arbitration provision, however, that the enforceability issue will be delegated to the arbitrator. (E.g., *AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 649 [89 L.Ed.2d 648, 106 S.Ct. 1415] (*AT&T*).)

To establish this exception, it must be shown by "clear and unmistakable" evidence that the parties intended to delegate the issue to the arbitrator. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 [131 L.Ed.2d 985, 115 S.Ct. 1920] (*First Options*); see *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. \_\_\_, \_\_\_, fn. 1 [177 L.Ed.2d 403, 130 S.Ct. 2772, 2777, fn. 1] (*Rent-A-Center*) [" '[u]nless the parties clearly and unmistakably provide

---

[4] The parties agree that the arbitration clause is subject to the FAA. Appellants do not contend that a different outcome would obtain if California law were applied. (See generally *Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185, 1190 [94 Cal.Rptr.3d 918] (*Gilbert Street*) [Cal. and federal courts apply same test]; *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494, 503 & fn. 2 [79 Cal.Rptr.3d 471] (*Ontiveros*) [Cal. law is consistent with clear and unmistakable rule].)

otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator' "]; *AT&T, supra*, 475 U.S. at p. 649.)[5]

The "clear and unmistakable" test reflects a "heightened standard" of proof. (*Rent-A-Center, supra*, 561 U.S. at p. ___, fn. 1 [130 S.Ct. at p. 2777, fn. 1].) That is because the question of who would decide the unconscionability of an arbitration provision is not one that the parties would likely focus upon in contracting, and the default expectancy is that the court would decide the matter. (*First Options, supra*, 514 U.S. at pp. 943–945.) Thus, the Supreme Court has decreed, a contract's silence or ambiguity about the arbitrator's power in this regard cannot satisfy the clear and unmistakable evidence standard. (*Ibid.*)

In the matter before us, the parties present no extrinsic evidence of an intent to permit the arbitration panel, rather than the court, to decide whether the arbitration provision in the Employment Agreement is unconscionable. Instead, they look to the language of the Employment Agreement itself.

Nowhere in the Employment Agreement is there any express grant of authority to the arbitrator to decide threshold issues such as the unconscionability of the arbitration provision. The Employment Agreement does not state that the arbitration panel, rather than the court, will determine if the arbitration provision is unconscionable or otherwise unenforceable. Indeed, there is no language indicating that the parties ever contemplated who would decide such issues.

Appellants nonetheless insist that the Employment Agreement clearly and unmistakably sets forth an intent to delegate such issues to the arbitration panel, pointing primarily to the breadth of the arbitration provision and its proviso that arbitration may be conducted according to the rules of the AAA (under which an arbitrator has the power to determine the validity of an arbitration agreement). Ajamian disagrees with appellants' arguments and points to other language in the Employment Agreement that suggests the arbitrator was not given exclusive authority to determine the enforceability of the arbitration provision. Ajamian—and the trial court—have it right.

---

[5] The United States Supreme Court has stated both that the parties' intent must be shown by clear and unmistakable evidence and that the parties' expression of intent must be clear and unmistakable. (See, e.g., *Rent-A-Center, supra*, 561 U.S. at p. ___ & fn. 1 [130 S.Ct. at p. 2777 & fn. 1]; *First Options, supra*, 514 U.S. at p. 944; *AT&T, supra*, 475 U.S. at p. 649.) The phrases appear to be used interchangeably and would yield the same result in at least the great majority of cases. The parties do not seize upon the distinction, and appellants fail to meet the standard under either iteration.

1. *Breadth of the Arbitration Provision*

The arbitration provision reads: "Any disputes, differences or controversies arising under this Agreement shall be settled and finally determined by arbitration . . . ." Further, the provision states: "It is expressly agreed that arbitration as provided herein shall be the exclusive means for determination of all matters arising in connection with this Agreement and neither party hereto shall institute any action or proceeding in any court of law or equity other than to request enforcement of the arbitrators' award hereunder. The foregoing sentence shall be a bona fide defense to any action or proceeding instituted contrary to this Agreement."

It is true that one reasonable inference from this language is that the parties, in designating arbitration as the exclusive means for determining "[a]ny disputes, differences or controversies" (and precluding court actions and providing a defense to them on this ground) intended that even threshold issues of unconscionability would be decided by the arbitration panel. But another reasonable inference is that all of this language is only intended to bring within the exclusive scope of arbitration all *substantive* disputes, claims or controversies on which a court action might otherwise be brought, while the *enforceability* of the arbitration provision itself remains a matter for determination by a court. Indeed, because that is the usual expectancy of the parties, the absence of any express language pertaining to threshold enforceability questions either reinforces that proposition or at least fails to cure the ambiguity. In light of the possibility of these two conflicting inferences, the language fails to meet the test of *clear and unmistakable* evidence.[6]

Appellants' arguments to the contrary are not established by the cases they cite. In *Rent-A-Center, supra,* 561 U.S. ___ [130 S.Ct. 2772], the arbitration agreement provided for arbitration of "all 'past, present or future' disputes arising out of [respondent] Jackson's employment with Rent-A-Center," and that " '[t]he Arbitrator, and not any federal, state, or local court or agency, *shall have exclusive authority to resolve any dispute relating to the* interpretation, applicability, *enforceability* or formation *of this Agreement* including, but not limited to any claim that all or any part of this Agreement is void or voidable.' " (*Id.* at p. ___ [130 S.Ct. at p. 2775], italics added.) Jackson had opposed a motion to compel arbitration on the ground that the arbitration agreement was unenforceable, because it was unconscionable. (*Ibid.*) The

---

[6] Appellants' argument is, essentially, that the alleged unconscionability of a provision requiring arbitration of all disputes should be determined by the arbitrator, because the provision requires arbitration of all disputes. The flaw in this argument, however, is that the converse is also true: if the language requiring arbitration of all disputes is unconscionable, then it would be unconscionable to permit an arbitrator to decide it. This conundrum is one of the reasons that the delegation question must be vigilantly tethered to the heightened standard of clear and unmistakable evidence.

question before the United States Supreme Court was whether the parties' undisputed agreement to arbitrate threshold issues of arbitrability was valid under the FAA: specifically, whether under the FAA "a district court may decide a claim that an arbitration agreement is unconscionable, where the agreement *explicitly* assigns that decision to the arbitrator." (561 U.S. at p. ___ [130 S.Ct. at p. 2775], italics added.)

*Rent-A-Center* is factually distinguishable from the matter at hand, because the arbitration provision in *Rent-A-Center* explicitly granted the arbitrator "exclusive authority" to determine the "enforceability" of the arbitration agreement, while the arbitration provision in this case does not. (*Rent-A-Center, supra*, 561 U.S. at p. ___ [130 S.Ct. at p. 2775].)

Things get worse for appellants in footnote 1 of the Supreme Court's opinion. The court confirmed that there is a higher standard of proof applicable to a claim that the parties intended to delegate enforceability questions to the arbitrator: *"First Options of Chicago, Inc.* v. *Kaplan*[, *supra,*] 514 U.S. 938, 944 held that '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.' The parties agree the *heightened standard* applies here." (*Rent-A-Center, supra*, 561 U.S. at p. ___, fn. 1 [130 S.Ct. at p. 2777, fn. 1].) Moreover, the Supreme Court observed, the respondent *did not dispute* that the text of the agreement clearly and unmistakably gave the arbitrator exclusive authority to decide whether the agreement to arbitrate was enforceable. (*Ibid.*) The sufficiency of the purported delegation language was therefore not before the court.

Accordingly, *Rent-A-Center* hurts rather than helps appellants. It confirms their burden is heavy, in that they must establish, by the *"heightened standard"* of clear and unmistakable evidence, that the parties agreed to arbitrate arbitrability. (*Rent-A-Center, supra*, 561 U.S. at p. ___, fn. 1 [130 S.Ct. at p. 2777, fn. 1], italics added.) It highlights the glaring absence from the Employment Agreement of any express grant of authority to the arbitrator to decide threshold enforceability issues. And unlike Ajamian in this case, the former employee in *Rent-A-Center* did not dispute that the agreement met the "clear and unmistakable" standard, so *Rent-A-Center* never decided whether the language of the purported delegation clause passed the test. (*Ibid.*)

Appellants' reliance on *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444, 451–452 [156 L.Ed.2d 414, 123 S.Ct. 2402] (*Green Tree*) fares no better. In *Green Tree*, an arbitration clause in a contract between a lender and its customer provided that " '[a]ll disputes, claims, or controversies arising from or relating to this contract or the relationships which

result[ed] from this contract . . . [would] be resolved by binding arbitration by one arbitrator selected by us with consent of you." (*Id.* at p. 448, italics omitted.) A plurality of the court ruled that the question of whether the agreement was silent on *class arbitration* was for the arbitrator to decide, because the parties agreed to submit all disputes arising from or related to the contract to the arbitrator, and the dispute related to the contract and the resulting relationships. (*Id.* at pp. 451–452; see *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. ___, ___–___ [176 L.Ed.2d 605, 130 S.Ct. 1758, 1771–1772].) That ruling, however, has nothing to do with the issue here—whether the agreement delegates to the arbitrator the authority to decide if an arbitration provision is *unenforceable* on unconscionability grounds. Indeed, the plurality noted this critical distinction in the text of its opinion. (*Green Tree*, at pp. 452–453.)[7]

Appellants also cite *Prima Paint v. Flood & Conklin* (1967) 388 U.S. 395 [18 L.Ed.2d 1270, 87 S.Ct. 1801], urging that the Supreme Court found delegation where an agreement provided that " '[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the rules then obtaining of the American Arbitration Association . . . .' " (*Id.* at p. 398.) Appellants are incorrect. In *Prima Paint*, it was held that the court's authority to determine the enforceability of the arbitration clause did not permit it to entertain a challenge to the enforceability of the contract as a whole, since an arbitration clause may be enforceable regardless of the enforceability of the contract of which it is a part. (*Id.* at pp. 402–404.) Thus, the court decides claims of fraud in the inducement of the arbitration clause, but the arbitrator decides claims of fraud in the inducement of the contract generally. (*Ibid.*) Here, Ajamian directed her unconscionability argument squarely at the arbitration provision.

 The two federal circuit cases on which appellants rely—both from the Second Circuit—are unavailing for multiple reasons. First, besides the fact that we are not obliged to follow decisions of the Second Circuit, neither case addresses the question before us: whether the language of the parties' agreement evinced a clear and unmistakable intent to submit to an arbitrator a

---

[7] The opinion stated: "In certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of 'clear and unmistakable' evidence to the contrary). [Citation.] These limited instances typically involve matters of a kind that 'contracting parties would likely have expected a court' to decide. [Citation.] They include certain gateway matters, such as *whether the parties have a valid arbitration agreement at all* or whether a concededly binding arbitration clause applies to a certain type of controversy. [Citations.] [¶] The question here—whether the contracts forbid class arbitration—*does not fall into this narrow exception.* It concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties." (*Green Tree, supra,* 539 U.S. at pp. 452–453, italics added.)

claim that *the arbitration provision itself was unconscionable*. In *Shaw Group, Inc. v. Triplefine Internat. Corp.* (2d Cir. 2003) 322 F.3d 115 (*Shaw*), the question was whether the federal district court could determine if the *scope* of an arbitration provision, by which arbitration had already been commenced according to rules authorizing the arbitrator to decide the issue, was sufficiently broad to require arbitration of a claim for damages arising out of a party's effort to stay the arbitration in contravention of the parties' representation agreement. (*Id.* at pp. 118–121.) In *Bell v. Cendant Corp.* (2d Cir. 2002) 293 F.3d 563, the arbitration provision was broader than the one before us (requiring arbitration of " 'any controversy arising in connection with or relating to this Agreement . . . or *any other matter or thing*' "), the issue was the scope of the arbitration provision rather than its unconscionability, and the decision was based on Connecticut law. (*Id.* at p. 568.)

Second, although not mentioned by appellants, other federal circuit courts have held that broad language of the type included in the Employment Agreement is *not* sufficient to constitute clear and unmistakable evidence of the parties' intent. (E.g., *Spahr v. Secco* (10th Cir. 2003) 330 F.3d 1266, 1270–1271; *Carson v. Giant Food, Inc.* (4th Cir. 1999) 175 F.3d 325, 329–331; *Riley Manufacturing Co. v. Anchor Glass Container Corp.* (10th Cir. 1998) 157 F.3d 775, 779; *McLaughlin Gormley King Co. v. Terminix Internat. Co., L.P.* (8th Cir. 1997) 105 F.3d 1192, 1194; *Virginia Carolina Tools, Inc. v. International Tool Supply, Inc.* (4th Cir. 1993) 984 F.2d 113, 117; see also *Nagrampa v. MailCoups, Inc.* (9th Cir. 2006) 469 F.3d 1257, 1263 (en banc) [not addressing the issue directly, but deciding that the court determines the unconscionability of an arbitration provision that requires arbitration of any dispute arising out of or relating to the contract, if the unconscionability of the arbitration provision, not the contract as a whole, is challenged].)

■ Third, in our view, the latter cases are clearly right. Language such as "any disputes, differences or controversies" may well be adequate and necessary for the parties to express their intention to arbitrate all *substantive* claims, since the number and diversity of potential future substantive claims is so great as to defy a specific enumeration of each type. But the issue of who would decide the enforceability of the arbitration clause *itself* is a horse of a different color. It is a distinct issue that could and would be easily addressed—if the parties actually contemplated it at the time of contracting—by stating expressly that the arbitrator shall decide questions of the enforceability of the arbitration provision. Because such issues are normally decided by the court, parties who consider the matter and want the issues to be decided instead by the arbitrator would most likely spell out their unusual intention in the arbitration provision. The absence of such express language (or extrinsic evidence to the same effect) therefore gives rise to the inference that the parties did *not* consider the matter. Indeed, because the issue is arcane and *not* likely contemplated by the parties, silence or ambiguity as to

who would decide the enforceability of the arbitration provision suggests it was not a matter on which the parties mutually agreed and, therefore, the enforceability issue *cannot* be arbitrated—no matter how much public policy favors the notion of arbitration generally. (*First Options, supra*, 514 U.S. at p. 944; see *Granite Rock, supra*, 561 U.S. at p. ___ [130 S.Ct. at p. 2859] ["[W]e have never held that this policy [favoring arbitration of disputes] overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.' [Citations.]"].) We note as well that *Shaw* and *Bell* predate *Rent-A-Center*, and thus did not have the advantage of the Supreme Court's confirmation that the clear and unmistakable test necessitates a *heightened* standard of proof.

Fourth, although no California case has decided the issue in connection with the arbitration provision here, our conclusion is entirely consistent with California case law. In *Sanchez v. Western Pizza Enterprises, Inc.* (2009) 172 Cal.App.4th 154 [90 Cal.Rptr.3d 818] (*Sanchez*), the court was confronted with whether California law, like federal law, would permit an arbitrator to decide questions of the enforceability of an arbitration agreement if the arbitration provision clearly and unmistakably delegated the matter to the arbitrator. The court concluded the question was immaterial since the breadth of the arbitration provision would not in any event constitute clear and unmistakable evidence. The court explained: "We need not decide whether such a clear and unmistakable provision would be enforceable because the arbitration agreement here *does not clearly state that the arbitrator will decide whether the arbitration agreement is enforceable.* Rather, the provision that the arbitrator will resolve 'any disputes over the interpretation or application of this Arbitration Agreement' does not appear to encompass disputes concerning the enforceability of the arbitration agreement based on unconscionability, public policy, or other grounds." (*Id.* at p. 166, italics added.) The provision in this case, like the provision in *Sanchez*, does not state that its enforceability is a matter for arbitration. (See *Winter v. Window Fashions Professionals, Inc.* (2008) 166 Cal.App.4th 943, 946–949 [83 Cal.Rptr.3d 89] (*Winter*) [under the FAA, the court, not the arbitration panel, was to decide the enforceability of an arbitration clause providing that any controversy or claim shall be submitted to binding arbitration].)[8]

We therefore hold that the clear and unmistakable evidence test is not met by language requiring arbitration of "[a]ny disputes, differences or controversies arising under" a contract. Even though, in this case, the agreement also

---

[8] *Winter, supra*, 166 Cal.App.4th 943, did not expressly decide that the breadth of the arbitration clause did not constitute clear and unmistakable evidence, so it is not a precedent for that proposition. It does confirm, however, that there is an *expectation* that the court, not an arbitrator, will decide whether the arbitration clause is enforceable, even when the clause is quite broad.

contains language referring to "all matters" and purporting to preclude the parties from initiating a court proceeding, it remains uncertain whether this language merely buttresses the requirement that every substantive claim must be arbitrated. Thus, while there might be something short of an express delegation that constitutes clear and unmistakable evidence of the parties' intent to arbitrate the unconscionability of an arbitration provision, this is not it.

Appellants fail to establish that the breadth of the arbitration provision constitutes clear and unmistakable evidence of an intent to delegate issues of the provision's enforceability to the arbitration panel.

### 2. Delegation Under AAA Rules

Appellants next contend there was clear and unmistakable evidence of the parties' intent to arbitrate the enforceability of the arbitration provision because the Employment Agreement specified that the arbitration could proceed according to the rules of the AAA, and those rules state that the arbitrator has the power to determine issues of his or her own jurisdiction. Appellants' argument is unpersuasive, at least under the circumstances of this case.

The Employment Agreement stated that arbitration would be held "according to the rules of the National Association of Securities Dealers, Inc. (or, at [CantorCO2e's] sole discretion, the American Arbitration Association or any other alternative dispute resolution organization) now in force and hereafter adopted and the laws of the state of New York then in effect." There is no evidence that Ajamian was given the AAA rules by the time she signed the Employment Agreement. After Ajamian sued, CantorCO2e exercised its unilateral discretion and demanded that Ajamian submit her claims to the AAA. As it turns out, the AAA rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (AAA Employment Arbitration Rules and Mediation Procedures (eff. Nov. 1, 2009) rule 6.a.)

Some courts have, in fact, held that a reference to the rules of arbitration services, which rules permit the arbitrator to determine issues of his or her jurisdiction, constitutes clear and unmistakable evidence that the parties intended to delegate the issue to the arbitrators. (E.g., *Contec Corp. v. Remote Solution Co.* (2d Cir. 2005) 398 F.3d 205, 208 ["[W]hen . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."]; *Terminix Internat. v. Palmer*

*Ranch Ltd. Partnership* (11th Cir. 2005) 432 F.3d 1327, 1332 [incorporation of AAA rules for commercial arbitration showed that the parties had clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause was valid]; *Awuah v. Coverall North America, Inc.* (1st Cir. 2009) 554 F.3d 7, 10–12 [incorporation of AAA rules constitutes clear and unmistakable evidence of parties' intent]; *Fallo v. High-Tech Institute* (8th Cir. 2009) 559 F.3d 874, 877–878 [same]; *Howard v. Rent-A-Center, Inc.* (E.D.Tenn., July 28, 2010, No. 1:10-CV-103) 110 Fair Empl.Prac.Cases (BNA) 535 [2010 WL 3009515, pp. *9, *12] (*Howard*) [agreement that arbitration shall be in accordance with then current rules of AAA, JAMS or NAF constitutes clear and unmistakable evidence of parties' intent to delegate issues of arbitrability to arbitrator]; *Clarium Capital Management LLC v. Choudhury* (N.D.Cal., Feb. 11, 2009, No. C 08-5157SBA) 2009 U.S.Dist. Lexis 14805, pp. *13–*14 [incorporation of AAA rules in arbitration agreement is clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability to the arbitrator].)

Even California cases have reached a similar conclusion, albeit not with respect to a claim that an arbitration clause was *unconscionable*, and not as to an arbitration clause in an employment agreement. (See *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1123 [39 Cal.Rptr.3d 437] [although the scope of an arbitration clause generally is a question for the court, parties clearly and unmistakably agreed to have the arbitrator determine the scope of the clause, where the contract mandated arbitration in accordance with AAA construction arbitration rules that specified the arbitrator's authority to rule on the *scope* of the arbitration agreement]; *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 550 [21 Cal.Rptr.3d 322] [parties' contract stated arbitration would be conducted in accordance with AAA commercial arbitration rules, which provided that the arbitrator would have the power to rule on his or her own jurisdiction, including objections with respect to the *scope* of the arbitration agreement].)

Other reported decisions, however, hold to the contrary, in keeping with the concern of the United States Supreme Court in *First Options* and *AT&T* that there be a sufficient showing that the parties focused and agreed upon the issue. For example, several federal circuit courts hold that the incorporation of NASD rules is insufficient to show a clear and unmistakable agreement to have arbitrators decide their own jurisdiction. (*Gilbert Street, supra*, 174 Cal.App.4th at pp. 1195–1196 [finding that a majority of federal circuits deciding the issue have so held], citing *PaineWebber, Inc. v. Hofmann* (3d Cir. 1993) 984 F.2d 1372, 1379, fn. 4; *Smith Barney, Inc. v. Sarver* (6th Cir. 1997) 108 F.3d 92, 96, abrogated on other grounds in *Vaden v. Discover Bank* (2009) 556 U.S. 49, 57 [173 L.Ed.2d 206, 129 S.Ct. 1262, 1270]; *Miller v. Flume* (7th Cir. 1998) 139 F.3d 1130, 1134; *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith* (10th Cir. 1996) 78 F.3d 474; *Merrill Lynch, Pierce, Fenner & Smith v.*

*Cohen* (11th Cir. 1995) 62 F.3d 381, 384; see also *Oblix, Inc. v. Winiecki* (7th Cir. 2004) 374 F.3d 488, 490 (*Oblix*) [observing, in apparent dictum, that an arbitration provision requiring any dispute or controversy arising out of or relating to an employment agreement to be resolved exclusively by arbitration under AAA rules was broad enough to encompass the plaintiff's substantive claims, but not broad enough to compel the conclusion that arbitrability was itself an issue for the arbitration].)

■ In our view, while the incorporation of AAA rules into an agreement might be sufficient indication of the parties' intent in other contexts, we seriously question how it provides *clear* and *unmistakable* evidence that an employer and an employee intended to submit the issue of the unconscionability of the arbitration provision to the arbitrator, as opposed to the court. There are many reasons for stating that the arbitration will proceed by particular rules, and doing so does not indicate that the parties' motivation was to announce who would decide threshold issues of enforceability.

Moreover, the reference to AAA rules does not give an employee, confronted with an agreement she is asked to sign in order to obtain or keep employment, much of a clue that she is giving up her usual right to have the court decide whether the arbitration provision is enforceable. Assuming that an employee reads the arbitration provision in the proposed agreement, notes that disputes will be resolved by arbitration according to AAA rules, and even has the wherewithal and diligence to track down those rules, examine them, and focus on the particular rule to which appellants now point, the rule merely states that the arbitrator shall have "the power" to determine issues of its own jurisdiction, including the existence, scope and validity of the arbitration agreement. This tells the reader almost nothing, since a court *also* has power to decide such issues, and nothing in the AAA rules states that the AAA arbitrator, as opposed to the court, *shall* determine those threshold issues, or has *exclusive* authority to do so, particularly if litigation has already been commenced.

Again, we must be mindful of what the United States Supreme Court has emphasized unflinchingly for decades: notwithstanding the public policy favoring arbitration, arbitration can be imposed only as to issues the parties agreed to arbitrate; given the slim likelihood that the parties actually contemplated who would determine threshold enforceability issues, as well as the default presumption that such issues would be determined by the court, those threshold issues must be decided by the court absent *clear and unmistakable* proof to the contrary. This is a "heightened standard," higher than the evidentiary standard applicable to other matters of interpreting an arbitration agreement. (*Rent-A-Center, supra,* 561 U.S. at p. ___, fn. 1 [130 S.Ct. at p. 2777, fn. 1]; *First Options, supra,* 514 U.S. at p. 944 [contrasting

"ordinary state-law principles that govern the formation of contracts" with the clear and unmistakable rule].) As the court cogently explained in *Gilbert Street, supra*, 174 Cal.App.4th at pages 1191–1192: "[I]t is not enough that ordinary rules of contract interpretation simply yield the result that arbitrators have power to decide their own jurisdiction. Rather, the result must be clear and unmistakable, because the law is solicitous of the parties actually *focusing* on the issue. Hence silence or ambiguity is not enough."

In the end, we need not decide whether an unqualified incantation of AAA rules establishes a clear and unmistakable delegation, because the reference to AAA rules in *this* case was insufficient for another reason: the Employment Agreement did not mandate that AAA rules would *necessarily* apply. Instead, the arbitration clause stated that the arbitration would be held according to NASD rules, AAA rules, *or* the rules of "any other alternative dispute resolution organization" selected by CantorCO2e in its sole discretion. As the trial court stated to appellants' counsel: "But your argument depends on it being the AAA rules, and there's . . . no way the plaintiff can know . . . as of the time that she signs this employment agreement that those are the rules that are going to apply."[9]

Appellants urge that it was sufficient to advise Ajamian that AAA or NASD rules might apply, and there was good reason to refer also to the rules of "any other alternative dispute resolution organization" in case the AAA and the NASD changed their names or stopped offering arbitration services. Whether the language had some purpose is not the point, however. The point is whether that language clearly and unmistakably evinced the parties' mutual intent to have the arbitrators decide even the issue of enforceability. Under the circumstances, it did not: the mere possibility that employer CantorCO2e might in the future require application of AAA rules does not show that employee Ajamian clearly and unmistakably assented to arbitrate the unconscionability of the arbitration agreement.

### 3. *Other Language in the Employment Agreement Raises Uncertainty*

Even if the broad language of the arbitration provision and the reference to AAA rules evinced an intent to delegate the unconscionability issue to the

---

[9] The court also stated: "Nor do I think that the argued incorporation of AAA rules, even assuming that those AAA rules would so allocate the decision, can prevail here where the employer in the agreement itself maintained for itself the unilateral authority to choose the rules that would apply, whether AAA, or NASD, or any others that the employer might choose." Appellants contend an employer can permissibly modify an arbitration agreement. (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1214 [78 Cal.Rptr.2d 533] (*24 Hour Fitness*).) The question, however, is whether the language permitting the employer to change the terms affects whether the provision is clear and unmistakable.

arbitrators, in this case *other* provisions of the Employment Agreement create an ambiguity that renders the totality of the evidence on the issue neither clear nor unmistakable.

As a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that the *court* might also find provisions in the contract unenforceable, there is no clear and unmistakable delegation of authority to the arbitrator. (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1565–1566 [98 Cal.Rptr.3d 743] (*Parada*) [fact that the contract's severability clause authorized the " 'trier of fact of competent jurisdiction' "—instead of " 'arbitration panel' " or " 'panel of three (3) arbitrators' "—to sever unenforceable contractual provisions suggests that the court could find the arbitration provision unenforceable (italics omitted)].)

Even broad arbitration clauses that *expressly* delegate the enforceability decision to arbitrators may not meet the clear and unmistakable test, where other language in the agreement creates an uncertainty in that regard. (*Hartley v. Superior Court* (2011) 196 Cal.App.4th 1249, 1257–1258 [127 Cal.Rptr.3d 174] [following and applying *Parada*]; see *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 888–894 [71 Cal.Rptr.3d 854] [parties' agreement did not clearly and unmistakably delegate issue of enforceability to arbitration, despite agreement's provision that " '[a]ny disputes concerning the interpretation or the enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause, [and] the scope of arbitrable issues . . . shall be decided by the arbitrator,' " where another provision indicated that the court might find a provision unenforceable].)

Here, a provision of the Employment Agreement provides that a "court of competent jurisdiction" may determine that a covenant in the Employment Agreement is impermissibly "broad in scope, duration or geographical area" or in the nature of a penalty, in which case the court should limit the scope, duration or geographical area of such covenant or reduce the liquidated damages to the extent necessary to render the covenant reasonable and enforceable. The Employment Agreement anticipates, therefore, that a *court* will in some circumstances have authority to rule on the breadth of the parties' covenants.

Appellants argue that this language merely gives the court power to limit the scope of the Employment Agreement's nondisclosure and nonsolicitation provisions, and such language is narrower than the language at issue in *Baker* or *Parada*. (See *Baker, supra,* 159 Cal.App.4th at p. 891 [" ' "any provision of this arbitration agreement shall be determined by the arbitrator or by any

court to be unenforceable" ' " (italics omitted)]; *Parada, supra,* 176 Cal.App.4th at p. 1566 [" '[i]n the event that any provision of this Agreement shall be determined by a trier of fact of competent jurisdiction to be unenforceable in any jurisdiction' " (italics omitted)].)

Appellants' argument is unpersuasive. In the first place, the language in the Employment Agreement does not necessarily limit the court's authority to ruling on the breadth of nonsolicitation or nondisclosure provisions; to the contrary, it may reasonably be interpreted to mean that the court may determine the "scope . . . or geographical area" of the arbitration provision itself—particularly the threshold issues of arbitrability and whether the geographical mandate that arbitration occur in New York is unconscionable. Indeed, the first sentence of the relevant paragraph pertains to "[t]he invalidity or unenforceability of *any* particular provision of this Agreement," and the paragraph explicitly refers to the court's power to limit the liquidated damages provision, not just the nondisclosure or nonsolicitation provisions.

Moreover, even if the language pertained only to the limitation of nonsolicitation and nondisclosure provisions, the fact that the Employment Agreement recognizes the court's authority to adjudicate the proper scope of *some* covenants in the Employment Agreement is inconsistent with the assumption, urged by appellants, that *all* issues in connection with the agreement must be determined by the arbitrator. A number of alternative inferences might be drawn from this language: (1) the court can rule on these issues if an arbitrator determines that the arbitration provision is unenforceable; (2) the court can rule on these issues during proceedings to enforce the arbitrators' award (which the arbitration provision permits)—although this would be inconsistent with the usual scope of judicial review of an arbitration award; *or* (3) the court can rule on these issues if the *court* concludes the arbitration provision was unconscionable or otherwise unenforceable. In the final analysis, the language creates an ambiguity that precludes a finding of clear and unmistakable evidence.[10]

For all of the foregoing reasons, appellants failed to establish by clear and unmistakable evidence that the parties intended to delegate to the arbitrators the exclusive authority to determine the conscionability of the arbitration provisions under which they purport to act.

---

[10] Ajamian also argues that the Employment Agreement recognizes that she might bring "an action" against CantorCO2e relating to the "validity" or "efficacy" of the Employment Agreement. Appellants point out that the provision does not explicitly state that she can bring "an action" *in court.*

#### 4. *Appellants Misconstrue* Rent-A-Center *in Another Respect*

Taking a different tack, appellants contend that, under *Rent-A-Center, supra,* 561 U.S. \_\_\_ [130 S.Ct. 2772], Ajamian had to raise her unconscionability arguments before the arbitrator because she attacked the arbitration clause as a whole rather than the delegation clause specifically. As support for this proposition, appellants note that Ajamian's attorney's response to CantorCO2e's request to arbitrate (before the petition to compel arbitration was filed) does not mention the unconscionability of delegating the matter to the arbitration panel.

Appellants again misperceive *Rent-A-Center.* The court did state that, unless the former employee (Jackson) challenged the unconscionability of the delegation provision specifically, it would not consider an unconscionability challenge to the delegation provision, and would instead treat the delegation provision as valid, enforce the delegation provision, and leave the challenge to the arbitration agreement as a whole to the arbitrator. But in *Rent-A-Center,* the issue of whether Jackson had challenged the delegation provision arose only because it had *already* been established that, indeed, there *was* an express delegation provision. Here, by contrast, there was *no* delegation provision, so we need not proceed to determine if the delegation itself was unconscionable, and whether Ajamian challenged the delegation specifically on unconscionability grounds is immaterial.

At any rate, appellants' argument fails because its premise is false: Ajamian *did* challenge the conscionability of the delegation in the trial court. In her opposition to appellants' petition to compel arbitration, Ajamian not only argued that the arbitration clause was unconscionable, but also argued that it would be unconscionable to delegate the enforceability issue to the arbitration panel.

The court did not err in ruling that the unconscionability of the arbitration provision was a matter for the court, not the arbitration panel.[11]

---

[11] Ajamian argues that, even if the Employment Agreement did delegate the unconscionability issue to the three-arbitrator panel in New York, the delegation itself was unconscionable, and the court had jurisdiction to determine at least that issue. We agree. The arbitration provision is procedurally unconscionable: as discussed *post,* substantial evidence supports the conclusion that it was presented to Ajamian on a take-it-or-leave-it basis, and although the provision referred to AAA rules, Ajamian was not provided a copy of those rules. The arbitration provision is also substantively unconscionable: CantorCO2e decides what arbitration service to use, and in order to obtain relief from having to present her claims to a three-arbitrator panel in New York under New York law, the provision would require her to present her argument to that very three-arbitrator panel in New York under New York law. (See, e.g., *Ontiveros, supra,* 164 Cal.App.4th at pp. 505–508 [provision in adhesion contract granting arbitrator exclusive authority to resolve disputes regarding enforceability of the

### B. Unconscionability of the Arbitration Provision in the Employment Agreement

As the party opposing arbitration, Ajamian had the burden of proving that the arbitration provision was unconscionable. (*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1099 [118 Cal.Rptr.2d 862].) We review the trial court's resolution of disputed facts for substantial evidence and decide de novo whether the facts, as so found, constitute unconscionability. (*Parada, supra*, 176 Cal.App.4th at p. 1567.)

■ Unconscionability requires a showing of both procedural unconscionability and substantive unconscionability. (*Armendariz, supra*, 24 Cal.4th at p. 114; *24 Hour Fitness, supra*, 66 Cal.App.4th at pp. 1212–1213; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1530–1531 [60 Cal.Rptr.2d 138].) Both components must be present, but not in the same degree; by the use of a sliding scale, a greater showing of procedural or substantive unconscionability will require less of a showing of the other to invalidate the claim. (*Armendariz, supra*, at p. 114.)

#### 1. Procedural Unconscionability

Procedural unconscionability pertains to the making of the agreement; it focuses on the oppression that arises from unequal bargaining power and the surprise to the weaker party that results from hidden terms or the lack of informed choice. (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 980 [104 Cal.Rptr.3d 341] (*Dotson*); see *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1252 [45 Cal.Rptr.3d 293] (*Higgins*) [referring to oppression and surprise, which is a function of the disappointed reasonable expectations of the weaker party]; *24 Hour Fitness, supra*, 66 Cal.App.4th at p. 1213 [referring to unequal bargaining positions and hidden terms].)

In announcing its ruling at the hearing, the trial court observed: "[T]here is at least some procedural unconscionability here in that at least the employer has required this agreement of somebody in order to not just obtain but keep a promotion in which she has been performing for some time, and I am inclined to believe that the requirement of an arbitration clause . . . was presented as a nonnegotiable portion of whatever that agreement would be." In essence, the court found, there was a degree of procedural unconscionability to the arbitration provision because it was a required term in a nonnegotiable agreement.

agreement is unconscionable]; *Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144–145 [67 Cal.Rptr.3d 120] (*Murphy*) [provision in adhesion contract specifying that arbitrable claims include assertions of unconscionability of the arbitration agreement is itself unconscionable].)

Substantial evidence supports the court's finding. Ajamian, who had already been working as a broker for almost 10 months, had no realistic bargaining power and was required to sign the Employment Agreement to receive her promised compensation—for work she had already performed. Furthermore, the Employment Agreement was not the subject of any negotiation. Ajamian stated in her declaration that she wanted to make changes to the Employment Agreement and felt uncomfortable signing it, but felt she had no choice based on Margolis's statements.

■ The finding that the arbitration provision was part of a nonnegotiated employment agreement establishes, by itself, some degree of procedural unconscionability. It was an adhesion contract, because it was based on a standardized form, drafted and imposed by a party of superior bargaining strength, and left Ajamian with only the option of adhering to the contract or rejecting it (and losing her position and compensation as broker). (*24 Hour Fitness, supra*, 66 Cal.App.4th at p. 1213; see *Neal v. State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].) A nonnegotiable contract of adhesion in the employment context is procedurally unconscionable. (*Armendariz, supra*, 24 Cal.4th at p. 115; *Dotson, supra*, 181 Cal.App.4th at p. 981 [in the case of an employment contract, procedural unconscionability is present if the proposed contract was presented on a nonnegotiable or take-it-or-leave-it basis]; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1470 [92 Cal.Rptr.3d 153] (*Roman*) ["The Supreme Court has acknowledged that adhesion contracts in the employment context typically contain some measure of procedural unconscionability."]; *Wisdom v. AccentCare, Inc.* (2012) 202 Cal.App.4th 591, 597 (*Wisdom*) [arbitration agreement imposed on employees as a condition of employment without the opportunity for negotiation is adhesive].)[12]

Where there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high. (*Dotson, supra*, 181 Cal.App.4th at pp. 981–982.) Appellants insist the arbitration provision was not otherwise procedurally unconscionable: Ajamian could not have been surprised by the arbitration provision, because she saw it; the arbitration provision is less than one page long and was not buried inconspicuously in a voluminous contract of fine print; Ajamian was not rushed or bullied into signing the Employment Agreement; she was educated; and she had six months to review the document, including review with the aid of an attorney.

---

[12] Appellants quote the following sentence from a footnote in *Roman*: "The adhesive nature of the contract will not always make it procedurally unconscionable." (*Roman, supra*, 172 Cal.App.4th at p. 1470, fn. 2.) Here, however, there was substantial evidence to conclude that Ajamian had no reasonable alternative to signing the Employment Agreement, so its adhesive nature provides at least the requisite minimum degree of procedural unconscionability. (*Ibid.*)

While we generally agree with appellants, there were, however, other indicia of procedural unconscionability. Ajamian argues that, at the time of contracting, she was unaware of the excessive costs she would incur in arbitrating before a three-judge panel in New York. (See *Parada, supra,* 176 Cal.App.4th at p. 1572.) Furthermore, although the arbitration provision stated that the arbitration would be conducted under AAA (or NASD) rules, the rules were not attached or provided. (See *Wisdom, supra,* 202 Cal.App.4th at p. 598; *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 485–486 [127 Cal.Rptr.3d 461]; *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393 [116 Cal.Rptr.3d 804]; *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406 [7 Cal.Rptr.3d 418]; *Parada, supra,* 176 Cal.App.4th at p. 1571 [failure to attach rules or fee schedule].)

In the end, we need not quibble over whether there was a moderate level of unconscionability, a low one, or just the required minimum; as we discuss next, the degree of substantive unconscionability was sufficient in any event to render the provision unenforceable. (See *Parada, supra,* 176 Cal.App.4th at p. 1585.)[13]

### 2. *Substantive Unconscionability*

Substantive unconscionability arises when a contract imposes unduly harsh, oppressive, or one-sided terms. (*Armendariz, supra,* 24 Cal.4th at p. 113 [provision in adhesion contract will not be enforced if it " 'does not fall within the reasonable expectations of the weaker or "adhering" party' " or if, in context, it is unduly oppressive or unconscionable].)

In finding that the arbitration provision was unconscionable, the court found that the damages limitation in the arbitration provision was unlawful and the attorney fees clause elsewhere in the Employment Agreement (which the arbitration provision would enforce) was unconscionable. Ajamian also argued, as she does here, that the arbitration provision is substantively unconscionable for reasons the trial court did not rule upon: the provision requires her to forfeit numerous unwaivable substantive California statutes; it grants CantorCO2e discretion to choose the arbitration rules and source of the arbitration panel; and it forces Ajamian to pay tens of thousands of dollars

---

[13] Relying on *Oblix, supra,* 374 F.3d 488, appellants argue that the fact that the arbitration provision was nonnegotiable is insufficient. Nothing in *Oblix,* however, is inconsistent with our conclusions. *Oblix* does not hold that a nonnegotiated contract is not an adhesion contract, or that an adhesion contract does not possess a degree of procedural unconscionability under California law. It observes merely that the fact a contract was of a standard form (or not negotiated) is not alone sufficient to render it unenforceable on the grounds of unconscionability. As such, *Oblix* is just an implicit acknowledgement of California law as we set it forth here: an adhesion contract is not unenforceable unless it also possesses the requisite degree of substantive unconscionability. (*Id.* at pp. 490–491.)

she did not have when she entered into the agreement to obtain relief by arbitrating before three arbitrators in New York.[14]

### a. *Waiver of right to statutory damages and remedies*

The arbitration provision precludes an award of special or punitive damages to either party, but permits the arbitrators to award CantorCO2e liquidated damages in addition to other damages: "[I]t is understood and agreed that the arbitrators are not authorized or entitled to include as part of any award rendered by them, special, exemplary, punitive or statutory double (or other multiple) damages or amounts in the nature of special, exemplary, punitive or statutory double (or other multiple) damages regardless of the nature or form of the claim or grievance that has been submitted to arbitration, except that the arbitrators shall be authorized and entitled to include as part of any award rendered by them in favor of [CantorCO2e] Liquidated Damages (as herein defined) provided for in this Agreement."

This provision gives CantorCO2e a greater potential for recovery than an employee such as Ajamian. Moreover, it precludes Ajamian from recovering special or statutory damages to which she would otherwise be entitled under California law.

The arbitration provision imposes another limitation on Ajamian's potential relief because it states that disputes will be "finally determined by arbitration . . . according to . . . the laws of the state of New York then in effect." On its face, this provision applies New York law rather than California law to

---

[14] In regard to the requirement that Ajamian arbitrate before a three-arbitrator panel in New York, Ajamian averred that she could not afford to commence arbitration or fund half of the arbitration in September 2006, and it may be inferred from the fact that Ajamian still lived and worked in California when she signed the Employment Agreement in December 2007 that having to arbitrate before three arbitrators in New York would impose a cost and burden she would not incur if she were able to pursue her claims in this state. (Indeed, this inference is hard for CantorCO2e to dispute, since the arbitration provision it included in the *Handbook* states that, where Cal. law applies, arbitration may be held in Cal.) Ajamian contends the arbitration provision thus compels her to incur expenses beyond what she would incur if her claim were litigated in court, which is prohibited by *Armendariz, supra,* 24 Cal.4th at pages 110–111. (See *Parada, supra,* 176 Cal.App.4th at pp. 1574, 1585–1587 [inability to pay substantial fees and costs in arbitrating before three-arbitrator panel reinforces conclusion of substantive unconscionability]; *Higgins, supra,* 140 Cal.App.4th at p. 1254 [use of AAA rules requiring that costs be equally borne by the parties was a contributing factor to substantive unconscionability]; accord, *Green Tree Financial Corp.-Ala. v. Randolph* (2000) 531 U.S. 79, 90–92 [148 L.Ed.2d 373, 121 S.Ct. 513] [arbitration agreement that is silent as to costs is not unenforceable under the FAA without a showing of a likelihood that arbitration costs would make arbitration prohibitively expensive]; *Lucas v. Gund, Inc.* (C.D.Cal. 2006) 450 F.Supp.2d 1125, 1134 [refusal to enforce provision requiring arbitration to take place in N.J. due to financial burden].) The trial court made no finding on this issue.

Ajamian's California employment. We find no applicable New York law in the record, and appellants fail to show that New York law would provide Ajamian with rights and remedies equivalent to those provided by California law.

As such, the arbitration provision requires Ajamian to waive California substantive law and the right to statutory and punitive damages and thus forces her to waive her unwaivable statutory rights and remedies. (See, e.g., *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 455–456 [64 Cal.Rptr.3d 773, 165 P.3d 556] [the right to overtime compensation under Lab. Code, § 1194 is unwaivable]; *Armendariz, supra,* 24 Cal.4th at pp. 103–104 [arbitration agreement's waiver of statutory damages remedies available under Cal. Fair Employment and Housing Act, Gov. Code, § 12900 et seq. (FEHA), is unlawful]; see generally Lab. Code, §§ 226, subds. (e), (f), 558, subd. (a).)

Appellants rely on *Narayan v. EGL, Inc.* (9th Cir. 2010) 616 F.3d 895 (*Narayan*) to argue that the provision requiring application of New York law is enforceable. Appellants' reliance on *Narayan* is unavailing. *Narayan* held it was improper for the trial court to apply Texas law, as provided in the parties' contract, to claims asserted under California's Labor Code. (*Narayan,* at pp. 898–899.) This confirms it would be improper for the arbitration panel to apply New York law, as mandated by the Employment Agreement, to claims Ajamian asserts under California law. *Narayan* thus underscores the *unlawfulness* of the express terms of the Employment Agreement. Appellants' apparent argument—that the arbitrator would have to obey *Narayan* and apply California law notwithstanding the arbitration provision's direction to the contrary—is an indictment of the arbitration agreement, not a vindication of it.[15]

### b. *Attorney fees*

The arbitration clause states: "The arbitrators shall make their award in accordance with and based upon all provisions of this Agreement . . . ." One of these "provisions" appears in section 11 of the Employment Agreement, imposing upon Ajamian the obligation to pay CantorCO2e's attorney fees if CantorCO2e prevails in the proceeding, without granting her the right to recoup her own attorney fees if she prevails. The section states: "Employee agrees that if Employee brings an action, claim or proceeding against [CantorCO2e] that relates to or implicates this Agreement, whether as to its

---

[15] A slightly different argument would be that the Employment Agreement's reference to New York law includes New York choice-of-law or conflict-of-law provisions, which might ultimately require application of California law to California claims. Appellants, however, do not establish that New York choice-of-law or conflict-of-law provisions would protect Ajamian's rights under California law.

validity, efficacy or otherwise, in the event that any of such Parties should prevail in such action, Employee shall pay the reasonable attorney's fees of such Party or Parties."

The provision is obviously not mutual and, on that basis alone, is unconscionable and unenforceable. It arguably strips Ajamian of her right to recover attorney fees under her California statutory claims. (See, e.g., Lab. Code, §§ 226, subds. (e), (h), 1194, subd. (a).) And it imposes on her the obligation to pay CantorCO2e's attorney fees where she would have no such obligation under at least one of her California statutory claims: a plaintiff employee is not responsible for the employer's attorney fees if the employer prevails on her overtime claim. (Lab. Code, § 1194, subd. (a); *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1429 [95 Cal.Rptr.2d 57]; see also *Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1249 [123 Cal.Rptr.3d 1] (*Wherry*) ["In a FEHA case, unless it would be unjust, a prevailing plaintiff should recover attorney fees, but a prevailing defendant is awarded fees only if the case was frivolous or filed in bad faith. [Citation.] Here, the agreements provide that the prevailing party is entitled to attorney fees, without any limitation for a frivolous action or one brought in bad faith. This violates *Armendariz*. [Citation.]"].) As the trial court found, "the attorneys' fee clause which the arbitration provision in the Employment Agreement would enforce is unconscionable."

Appellants argue that the attorney fees provision appears in section 11 of the Employment Agreement, not in section 8 regarding arbitration, and it should not be "bootstrapped" into the arbitration clause to render it void. In addition, they argue, the court should not look to language outside of the arbitration provision to determine the enforceability of the arbitration provision, because the arbitration provision is separable from the rest of the contract.

Appellants' argument is simply untenable. The arbitration provision in section 8 of the Employment Agreement specifically requires the arbitrators to "make their award in accordance with and based upon all provisions of this Agreement," and the attorney fees provision in section 11 of the Employment Agreement is one of the "provisions of this Agreement."

c. *Appellants'* Pearson Dental *Argument*

Appellants next argue that the unconscionable terms in the arbitration provision should be interpreted so as to render the provision valid rather than void, in order to further the public policy favoring arbitration, based on the ruling in *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 682 [108 Cal.Rptr.3d 171, 229 P.3d 83] (*Pearson Dental*). In particular,

appellants contend (1) the court should have ordered that AAA rules, which permit the arbitrator to grant any remedy or relief that would have been available to the parties if the matter had been heard in court, trumped illegal remedy provisions in the Employment Agreement pertaining to the limitations on special and punitive damages; (2) the limitation on damages should be interpreted as applying only where lawful—that is, to any claims arising under New York law (where arbitrators are purportedly prohibited from awarding special damages) and any claims under California law where special damages are not recoverable; and (3) the attorney fee provision can be interpreted as applying only to contract claims. Their argument is meritless.

In *Pearson Dental*, an arbitration agreement contained language reciting the parties' intent to avoid the inconvenience of formal administrative proceedings. The court found that this language was merely a statement of purpose and did not actually preclude the plaintiff from pursuing any administrative remedy; and even if it did, the term would not be unlawful in all applications. (*Pearson Dental, supra*, 48 Cal.4th at p. 681.) The court then stated: "When an arbitration provision is *ambiguous*, we will interpret that provision, if *reasonable*, in a manner that renders it lawful, both because of our public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution, and because of the general principle that we interpret a contractual provision in a manner that renders it enforceable rather than void. [Citations.]" (*Id.* at p. 682, italics added.) The court interpreted the term as stating an intention to *lawfully* preclude or restrict the parties from submitting administrative claims. (*Ibid.*)

As a general proposition (where the clear and unmistakable test does not apply), we agree that *ambiguous* terms should be construed, where *reasonable*, in favor of arbitration. But the *Pearson Dental* rule does not apply here. In *Pearson Dental*, the court considered a single potentially unconscionable term in an arbitration agreement; here, there are multiple unconscionable terms in the Employment Agreement. Moreover, the term in *Pearson Dental* was ambiguous and did not expressly preclude the plaintiff from pursuing any remedy; by contrast, the unconscionable terms in the Employment Agreement categorically mandate that arbitration proceed, under the laws of New York and an arbitration organization of CantorCO2e's choosing, without the relief to which Ajamian would be entitled in California, but with an obligation to pay CantorCO2e's attorney fees if unsuccessful. Further, the language of the arbitration provision does not lend itself to an interpretation that the arbitrator may make awards contrary to the terms of the Employment Agreement; indeed, the Employment Agreement explicitly states just the opposite. (See *Wherry, supra*, 192 Cal.App.4th at pp. 1249–1250.)

We also disagree with appellants' argument that the attorney fees provision can reasonably be interpreted to apply only to contract claims. The relevant

language states: "Employee agrees that if Employee brings an action, claim or proceeding against [CantorCO2e] that *relates to or implicates this Agreement, whether as to its validity, efficacy or otherwise,* in the event that any of such Parties should prevail in such action, Employee shall pay the reasonable attorney's fees of such Party or Parties." (Italics added.) Appellants argue that the phrase "relates to or implicates this Agreement" renders the clause relevant only to contract claims based on the Employment Agreement, and not to statutory claims for which CantorCO2e's right to recover attorney fees would be more limited. But the language plainly covers not just causes of action sounding in contract, but any claim that merely "relates to or implicates" the Employment Agreement; it is utterly unconvincing to argue that none of Ajamian's statutory claims, based on her employment, relate to or even implicate her Employment Agreement.[16]

■ The reasonable interpretation of the arbitration provision is that it is substantively unconscionable, rendering the nonnegotiable arbitration provision unenforceable.

### 3. Severance of Unconscionable Terms

Appellants argue that the term prohibiting the parties from recovering special damages can be deleted from the Employment Agreement, and the provision pertaining to attorney fees is not part of the arbitration provision. By severing these terms, they suggest, the arbitration provision as so modified should be enforced. (See Civ. Code, § 1670.5, subd. (a).) We review the trial court's refusal to sever the offending provisions for an abuse of discretion. (*Armendariz, supra,* 24 Cal.4th at p. 122; *Ontiveros, supra,* 164 Cal.App.4th at p. 502.)

■ In deciding whether to sever terms rather than to preclude enforcement of the provision altogether, the overarching inquiry is whether the interests of justice would be furthered by severance; the strong preference is to sever *unless* the agreement is "permeated" by unconscionability. (*Dotson, supra,* 181 Cal.App.4th at pp. 985–986 [where only one provision of agreement is unconscionable and it can be easily severed without affecting the remainder, the proper course is to do so]; see *Armendariz, supra,* 24 Cal.4th at pp. 124–125; *Roman, supra,* 172 Cal.App.4th at pp. 1477–1478;

---

[16] In fact, the "relates to or implicates this Agreement" language in section 11 of the Employment Agreement is seemingly broader than the "[a]ny disputes, differences or controversies *arising under* this Agreement" language in the arbitration provision contained in section 8 of the Employment Agreement. (Italics added.) If indeed section 11 pertains only to breach of contract claims, the arbitration provision pertains only to breach of contract claims, and none of Ajamian's causes of action are subject to arbitration.

*Harper v. Ultimo, supra,* 113 Cal.App.4th at p. 1411 ["refusing to enforce the entire agreement is an option 'only when an agreement is "permeated" by unconscionability' "].)

"An employment arbitration agreement can be considered permeated by unconscionability if it 'contains *more than one* unlawful provision . . . . Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage.' [Citation.]" (*Murphy, supra,* 156 Cal.App.4th at p. 149, italics added [no abuse of discretion where two aspects of arbitration agreement unconscionable], citing *Armendariz, supra,* 24 Cal.4th at p. 124; see *Sanchez, supra,* 172 Cal.App.4th at p. 181 [arbitration agreement was permeated by an unlawful purpose, because multiple unconscionable "provisions considered together indicate an effort to impose on an employee a forum with distinct advantages for the employer"].)

Moreover, the entire provision is unenforceable if the only way to cure the unconscionability is " 'in effect to rewrite the agreement,' " since courts " 'cannot cure contracts by reformation or augmentation.' " (*Ontiveros, supra,* 164 Cal.App.4th at p. 515, fn. 16; see *Zullo, supra,* 197 Cal.App.4th at pp. 487–488 [refusing to enforce entire arbitration provision because "[i]n order to neutralize the multiple defects of the instant agreement we would have to add terms and that we are not authorized to do"]; *Wherry, supra,* 192 Cal.App.4th at p. 1250 ["Here, based on the several unconscionable provisions detailed above 'the arbitration agreement is so " 'permeated' by unconscionability [it] could only be saved, if at all, by a reformation beyond our authority." [Citations.]' "].)

In the matter before us, there are multiple unconscionable terms in the arbitration provision, and it was not an abuse of discretion to conclude that the unconscionability so permeated the provision that it could not be cured except by rewriting it (which the court cannot do) or by refusing to enforce the section in its entirety. The first sentence of the arbitration provision was unconscionable because it purported to require Ajamian to submit all disputes to a panel of three arbitrators in New York, under New York law (forcing Ajamian to waive her Cal. statutory rights) and according to the rules of the arbitration organization unilaterally selected by CantorCO2e. The second sentence was unconscionable, because it required the arbitrators to "make their award in accordance with and based upon all provisions of this Agreement," thereby incorporating the unlawful attorney fees provision. The third sentence was unconscionable, in that it required Ajamian to waive her rights to special, exemplary and statutory double damages, but granted CantorCO2e the right to enforce its liquidated damages provision.

Furthermore, by attempting to require Ajamian to submit claims pertaining to her employment in California to a three-arbitrator panel across the country in New York under New York law, according to the undisclosed rules of an arbitration organization CantorCO2e could choose at its sole discretion, without the remedies to which she was statutorily entitled, yet saddled with the prospect of paying CantorCO2e's attorney fees contrary to California law, there is more than a reasonable inference that the arbitration provision had little to do with agreeing on an efficient, less costly forum and everything to do with exploiting an unfair advantage and, indeed, discouraging her from seeking redress for her claims at all.[17]

Accordingly, the court's ruling was not arbitrary or irrational so as to constitute an abuse of discretion, and the court did not err in ruling that the entirety of the arbitration provision in the Employment Agreement was unenforceable on the grounds of unconscionability.[18]

## C. *Arbitration Under the Handbook*

As an alternative to enforcing the arbitration provision in the Employment Agreement, appellants seek to enforce the arbitration provision in the Handbook. The court did not err in declining to do so.

When Ajamian commenced her employment in September 2006, she acknowledged receipt of the Handbook, which contained CantorCO2e's policy on arbitrating disputes and an arbitration agreement with a signature page. Ajamian asserts she did not know the contents of the Handbook at the time, and it is undisputed she did not sign the arbitration agreement or the part of the Handbook that set forth the company policy of arbitrating disputes. Appellants do *not* contend that Ajamian was nonetheless bound by the arbitration agreement in the Handbook when she *commenced* her employment; instead, they urge that she became bound *after* the termination of the Employment Agreement.

---

[17] Appellants argue that the arbitration provision was not in bad faith because its limitation on rights and remedies would have been permissible under New York law. That, however, ignores the point: the arbitration provision was presented to a *California* employee, whose employment occurred in California and was governed by California statutes.

[18] Appellants refer us to *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [179 L.Ed.2d 742, 131 S.Ct. 1740], contending that arbitration provisions cannot be ruled unenforceable for reasons unique to arbitration clauses and not applicable to contracts in general. In *AT&T Mobility*, the court held that the FAA preempted a California rule providing that class action waivers in commercial adhesion contracts were unconscionable, because the rule interfered with the purposes of the FAA and was not just a principle of unconscionability applicable to contracts generally. The concerns expressed in *AT&T Mobility* do not preclude the outcome here. (See *Sanchez v. Valencia Holding Co., LLC* (2011) 201 Cal.App.4th 74, 88–89 [135 Cal.Rptr.3d 19].)

The Employment Agreement was terminated as of March 1, 2010. Pursuant to section 4 of the Employment Agreement, at that point "the terms of Employee's employment, including, but not limited to Employee's compensation, shall be governed by Company's policies then in effect . . . ." By that time, Ajamian acknowledges, she had seen the Handbook, which sets forth certain policies, including the company's arbitration policy. By continuing in CantorCO2e's employ, appellants argue, she agreed to abide by the arbitration policy and, more specifically, the arbitration agreement contained in the Handbook.

We disagree. Although section 4 of the Employment Agreement dictates that Ajamian's employment would be "governed" by CantorCO2e's "policies then in effect," it does not specifically state she would be bound by any arbitration agreement or even mention arbitration at all. Nor was there evidence that she was provided, upon termination of the Employment Agreement, a copy of those "policies *then* in effect." Moreover, while Ajamian did have the Handbook containing the company's *policy* of arbitrating disputes, she never signed or agreed to the actual arbitration agreement in the Handbook, and she was never even asked to do so after the Employment Agreement was terminated. Under the circumstances, section 4 cannot be construed to validly obligate Ajamian to arbitrate her claims.

Instructive in this regard is *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164 [69 Cal.Rptr.3d 223]. There, employees signed a document acknowledging receipt of the company's policy handbook, but denied reading the handbook or knowing its contents at the time. (*Id.* at p. 1168.) As it turned out, the handbook asserted the company policy that all disputes would be submitted to binding arbitration and all employees would be required to sign a separate arbitration agreement. The employees, however, never signed the arbitration agreement. (*Id.* at pp. 1167–1168, 1170–1171.) The court held that the employees' acknowledgement of the company's policies was insufficient to obligate them to arbitrate disputes, because the policies also contemplated that the employees sign the separate formal arbitration agreement. (*Id.* at pp. 1170–1171.)

Here, too, to the extent Ajamian acknowledged receipt of the Handbook, received the Handbook, understood after termination of the Employment Agreement that she was bound by the policies contained in the Handbook, yet continued to work at the company, she did not consent to the arbitration agreement she never signed. (See *Romo v. Y-3 Holdings, Inc.* (2001) 87 Cal.App.4th 1153, 1159–1160 [105 Cal.Rptr.2d 208] [fact that employee signed an acknowledgement of her receipt of the employee handbook did not constitute consent to the stand-alone arbitration agreement contained within the handbook, where the receipt did not expressly mention the arbitration agreement and she never signed the arbitration agreement].)

Appellants argue that Ajamian's continued employment after receipt of the policies in the Handbook constitutes acceptance of and consideration for the arbitration policy, based on *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421–422 [100 Cal.Rptr.2d 818] (*Craig*).) Their reliance on *Craig* is misplaced. There, the employee was twice sent brochures describing the company's dispute resolution program, with all-caps notices which emphasized that the employee was bound by the program. (*Id.* at pp. 419–420.) Here, by contrast, Ajamian was never sent such a notice upon termination of the Employment Agreement, and section 4 of the Employment Agreement refers generically to "policies," not to arbitration.

Appellants further argue that Ajamian is bound by the Handbook's arbitration provision because she accepted the benefits of the policies set forth in the Handbook (including paid vacation). (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64 [100 Cal.Rptr.2d 683] (*NORCAL*); see Civ. Code, § 1589 ["A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."].)

*NORCAL*, however, is not on point. There, the respondent was bound by an arbitration clause contained in an insurance policy because the respondent sought and accepted the benefits of the policy, including the costs of defending against litigation. (*NORCAL*, *supra*, 84 Cal.App.4th at pp. 73, 78.) In the matter before us, by contrast, there is no showing that Ajamian obtained any benefits under the Handbook policies that she would not have been entitled to anyway under California law.

Although not a basis for our ruling, we also note a certain oddity to the result appellants urge. Appellants do not contend Ajamian was bound by the arbitration provision in the Handbook until after the termination of the Employment Agreement on March 10, 2010. Because the arbitration provision in the Employment Agreement was unconscionable, Ajamian was not bound by any valid arbitration provision from the commencement of her employment in September 2006 through March 10, 2010; if the arbitration clause in the Handbook did apply, it applied only from March 10, 2010, until the termination of her employment on April 16, 2010. It would be a strange result indeed if, under the facts of this case, an arbitration clause covering approximately the last five weeks of Ajamian's employment compelled arbitration of claims that had accrued within the 30 months *prior*. In our view, such a holding would permit the tail to wag the dog, an untenable proposition no matter how favored a breed arbitration might be.

Appellants fail to establish error.

## III. DISPOSITION

The order is affirmed.

Simons, Acting P. J., and Bruiniers, J., concurred.