Filed 12/3/21  Newton v. Johnson & Johnson Surgical Vision CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GIULIA NEWTON,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JOHNSON & JOHNSON SURGICAL VISION, INC., et al.,<br><br>      Defendants and Appellants. | G059729<br><br>(Super. Ct. No. 30-2020-01147443)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Craig L. Griffin, Judge.  Affirmed.  Motion to dismiss and requests for judicial notice are denied.

Carlton Fields, Mark A. Neubauer, Meredith M. Moss and Scott L. Menger for Defendants and Appellants.

Barritt Smith Miner and Perry G. Smith for Plaintiff and Respondent.

\*        \*        \*

Generally, it is up to a trial court to decide whether an arbitration agreement is enforceable in a particular dispute, unless the parties have "clearly and unmistakably" delegated that question—termed "arbitrability"— to the arbitrator. (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 505.)

In 2002, Giulia Newton signed an employment, intellectual property, and abitration agreement with Advanced Medical Optics, Inc. (AMO), a seller of surgical vision products. In 2009, Abbott Laboratories, Inc. (Abbott) acquired AMO. Newton signed a new employment agreement with Abbott, but it did not include an arbitration clause. In 2017, Johnson & Johnson Surgical Vision Inc. (J&JSV) acquired Abbott.

In 2020, Newton filed a complaint against J&JSV, alleging wrongful termination, sexual harassment, and related claims. J&JSV filed a motion to compel arbitration. The trial court denied the motion, finding: 1) the 2002 arbitration agreement did not "clearly and unmistakably" delegate the question of arbitrability to the arbitrator; and 2) the 2002 arbitration agreement was no longer enforceable because it had been replaced and superseded by the 2009 employment agreement.

We affirm the order denying J&JSV's motion to compel arbitration.


I

FACTS AND PROCEDURAL BACKGROUND

In 2002, Newton signed a document entitled: **"ADVANCED MEDICAL OPTICS AT-WILL EMPLOYMENT AND INTELLECTUAL PROPERTY AND ARBITRATION AGREEMENT ("AGREEMENT")."**

The parties agreed to binding arbitration according to the rules of the designated arbiter, Judicial Arbitration and Mediation Services, Inc. (JAMS). The AMO abitration agreement included a clause generally specifying the employment claims to be covered (e.g., wages, discrimination, termination, etc.). The agreement also included a clause generally specifying the employment claims to be excluded (e.g., worker's

2

compensation, pension, etc.).  The exclusion clause further provided, "that all remaining issues will be arbitrated."

The agreement also included the following:  "This provision of this Agreement concerning intellectual property, arbitration, or waiver of jury trial shall survive the termination of my employment.  It can only be revoked, modified or superceded [*sic*] by a writing signed by both me and the Company, which specifically states an intent to revoke, modify or supercede [*sic*] this Agreement."  "This Agreement may be assigned by the Company to a successor of all or part of its business or assets."

*Merger/Acquisition of AMO by Abbott*

In February 2009, AMO filed a certificate of merger, changing its name to Abbott Medical Optics, Inc.[1]

In March 2009, Newton signed a pre-printed document entitled: **"EMPLOYMENT AGREEMENT."**  The new employment agreement did not include an arbitration clause.

The document included the following: "This Agreement shall be construed, and its enforceability and the relationship of the parties shall be determined, in all respects under the laws of Illinois, without giving effect to conflict of laws."  "This Agreement is the sole, entire, and complete agreement of the parties relating to the subject matter hereof, replaces and supersedes all prior versions and representations, and shall apply, notwithstanding that such employment may include significant changes in responsibilities, location, and other terms and conditions . . . ."

In April 2009, Newton signed a letter from Abbott referred to as a "Retention Agreement."  The retention agreement did not include an arbitration clause.

---

[1]Although Advanced Medical Optics, Inc. and Abbott Medical Optics, Inc. share the same initials AMO, in this appeal, other than in direct quotations, we are referring only to Advance Medical Optics, Inc. as AMO.

*Merger/Acquisition of Abbott by J&JSV*

In 2018, Abbott filed a restated certificate of merger changing its name from Abbott to J&JSV.

*Trial Court Proceedings*

In 2020, Newton filed a complaint against J&JSV et al., alleging sexual harassment, retaliation, and related claims. Newton had been employed by J&JSV (and/or its predecessors) since 1999. Newton's job title was Head of Commercial Operations for Canada & Latin America. Newton generally alleged she had been subjected to unwanted sexual advances, and when she reported this conduct internally the company retaliated, culminating in the termination of her employment in 2019.

J&JSV filed a motion to compel arbitration. J&JSV alleged Newton had signed the 2002 arbitration agreement but she had refused to arbitrate.

Following a hearing, the trial court denied J&JSV's motion to compel arbitration. J&JSV filed a notice of appeal.

Both parties have filed requests in this court for judicial notice of various documents related to JAMS. The documents are not relevant to our analysis, so the requests for judicial notice are denied. (See *Stop the Casino 101 Coalition v. Brown* (2014) 230 Cal.App.4th 280, 291, fn. 10 [judicial notice denied where materials were "irrelevant or unnecessary to resolution of the issues on appeal"].)

Newton also filed a motion to dismiss this appeal, largely based on J&JSV's reply brief. J&JSV filed an opposition arguing the motion was essentially a sur-reply brief. J&JSV's argument is well taken, so Newton's motion to dismiss is denied. (See *In re Sayle's Estate* (1931) 212 Cal. 437, 438 ["if the disposition of a motion to dismiss requires a consideration of the appeal on its merits, the motion must be denied"].)

II

DISCUSSION

The standard of review varies based on the issues presented. "There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed." (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)

Here, the relevant issues are: A) whether the 2002 arbitration agreement delegated the question of arbitrability (the enforceability of the arbitration agreement) to the arbitrator; and B) whether the 2002 arbitration agreement was no longer enforceable because it had been superseded by the 2009 employment agreement. These are legal issues, so our review is de novo.

*A. The 2002 arbitration agreement did not delegate arbitrability to the arbitrator.*

Generally, when interpreting an abitration agreement, it is presumed the question of arbitrability is to be determined by a court, not by an arbitrator. (*Douglass v. Serenivision, Inc*. (2018) 20 Cal.App.5th 376, 386-387.) "The default presumption—and it is a 'strong' one—is that '"the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability,'"' e.g., whether there is an enforceable arbitration agreement or whether it applies to the dispute at hand.' [Citations.] However, the parties are free to designate the arbitrator as the one to decide whether a particular dispute is subject to arbitration [citations], although they must do so '*clearly and unmistakably*' if they wish to rebut the default presumption to the contrary . . . ." (*Ibid.*)

"The 'clear and unmistakable' test reflects a '*heightened* standard of proof' that reverses the typical presumption in favor of the arbitration of disputes." (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 892 (*Aanderud*).) The clear and

5

unmistakable test is justified because the question of who will decide issues of arbitrability "is not one that the parties would likely focus upon in contracting, and the default expectancy is that the court would decide the matter." (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 782 (*Ajamian*).) Accordingly, an arbitration agreement's "silence or ambiguity about the arbitrator's power [to decide the question of arbitrability] cannot satisfy the clear and unmistakable evidence standard." (*Ibid*.)

If a delegation clause is clear and unmistakable, then the question of arbitrability is properly delegated to the arbitrator. (See *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1559-1560 (*Malone*).) In *Malone*, an employee brought an action against her former employer. (*Id*. at p. 1555.) The employer moved to compel arbitration and have the arbitrator rule on the question of arbitrability based on an agreement that stated: "'The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement.'" (*Id*. at p. 1560.) The appellate court ruled in favor of the employer, finding the delegation clause to be effective: "There is no suggestion that this language was not sufficiently clear and unmistakable." (*Ibid*.; see *Aanderud*, *supra*, 13 Cal.App.5th at p. 892 [a delegation clause was effective where an arbitration agreement provided "that the parties 'agree to arbitrate all disputes . . . , *including the determination of the scope or applicability*'" of the arbitration clause], italics added.)

If a delegation clause is not clear and unmistakable, then the question of arbitrability is decided by a court. (See *Ajamian*, *supra*, 203 Cal.App.4th at p. 775.) In *Ajamian*, an employee brought an action against his former employer. The employer moved to compel arbitration and have the arbitrator rule on the question of arbitrability based on an agreement that stated: "'It is expressly agreed that arbitration as provided herein shall be the exclusive means for determination of all matters arising in connection with this Agreement . . . .'" (*Id*. at p. 783.) The appellate court ruled against the employer, finding the alleged delegation clause to be ineffective: "Language such as

6

'any disputes, differences or controversies' may well be adequate and necessary for the parties to express their intention to arbitrate all *substantive* claims . . . . But the issue of who would decide the enforceability of the arbitration clause *itself* is a horse of a different color. It is a distinct issue that could and would be easily addressed . . . by stating expressly that the arbitrator shall decide questions of the enforceability of the arbitration provision. . . . The absence of such express language . . . gives rise to the inference that the parties did *not* consider the matter. Indeed, . . . silence or ambiguity as to who would decide the enforceability of the arbitration provision suggests it was not a matter on which the parties mutually agreed and, therefore, the enforceability issue *cannot* be arbitrated—no matter how much public policy favors the notion of arbitration generally." (*Id*. at pp. 786-787.)

In this case, there is no language in the 2002 arbitration agreement stating: "the arbitrator shall decide questions of the enforceability of the arbitration provision." (See *Ajamian*, *supra*, 203 Cal.App.4th at pp. 786-787.) Nor is there any language stating: "'The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement.'" (See *Malone*, *supra*, 226 Cal.App.4th at p. 1560.) Nor is there any similar language in the arbitration agreement that mentions its interpretation, applicability, or enforceability.

Thus, we find there is no delegation clause in the 2002 arbitration agreement signed by Newton and the enforceability of the arbitration agreement was properly decided by the trial court (and is properly reviewed by this court).

J&JSV asserts the following italicized phrase in the 2002 arbitration agreement is a delegation clause that delegates the issue of arbitrability to the arbitrator: "Claims by either me or the Company for emergency injunctive relief or other expedited equitable relief that cannot be adequately addressed in arbitration may be brought in a court of competent jurisdiction; *provided however, that all remaining issues will be arbitrated*." (Italics added.) We disagree.

7

The phrase "all remaining issues will be arbitrated" is not a clear and unmistakable delegation clause; rather, it appears to be a "catch-all" provision contained within one of the *substantive* contract clauses.

That is, the "all remaining issues" phrase appears to express an intent by the parties to arbitrate all other *substantive* employment issues not specifically delineated within the arbitration agreement. But just as the court stated in *Ajamian*, the "issue of who would decide the enforceability of the arbitration clause *itself* is a horse of a different color." (See *Ajamian*, *supra*, 203 Cal.App.4th at pp. 786-787.) In other words, the absence of any express delegation clause (or any comparable language whatsoever) in the 2002 arbitration agreement "gives rise to the inference that the parties did *not* consider" the question of arbitrability. (*Ibid*.)

In sum, the enforceability of the 2002 arbitration agreement "*cannot* be arbitrated—no matter how much public policy favors the notion of arbitration generally." (See *Ajamian*, *supra*, 203 Cal.App.4th at pp. 786-787.)

B. *The 2002 arbitration agreement is not enforceable against Newton because it was replaced and superseded by her 2009 employment agreement.*

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the [parties] to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for rescission of the agreement." (Code Civ. Proc., § 1281.2.)

"Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1219.)

8

"In California, a subsequent written contract alters the terms of a previous contract." (*Thiele v. Merrill Lynch, Pierce, Fenner & Smith* (S.D.Cal. 1999) 59 F.Supp.2d 1060, 1064 [court held an arbitration provision in a securities registration form superseded similar provisions in forms previously signed by an employee]; *Crossen v. Foremost-McKesson, Inc.* (N.D.Cal. 1982) 537 F.Supp. 1076, 1077 [a subsequent written employment contract provision relating to termination of employment superseded prior written contract provision relating to termination of employment].)

"We interpret an arbitration agreement as we would any other contract. '"The fundamental rule is that interpretation of . . . any contract . . . is governed by the mutual intent of the parties at the time they form the contract. [Citation.] The parties' intent is found, if possible, solely in the contract's written provisions. [Citation.] 'The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation.' [Citation.] If a layperson would give the contract language an unambiguous meaning, we apply that meaning."'" (*Kec v. Superior Court* (2020) 51 Cal.App.5th 972, 978.)

In 2002, Newton signed a document with AMO entitled **"ADVANCED MEDICAL OPTICS AT-WILL EMPLOYMENT AND INTELLECTUAL PROPERTY AND ARBITRATION AGREEMENT ("AGREEMENT")."** The 2002 agreement stated that it was to apply to "its successors and assigns."

However, in 2009, Newton signed a new and different employment agreement with AMO's successor, Abbott. Newton's new employment agreement with Abbott included an integration clause that provided: "This Agreement is the sole, entire, and complete agreement of the parties relating to the *subject matter hereof*, *replaces and supersedes all prior versions and representations*, and shall apply, notwithstanding that *such employment* may include significant changes in responsibilities, location, and other

9

terms and conditions . . . ." (Italics added.) The new 2009 employment agreement included absolutely no mention of arbitration.

We interpret Newton's new 2009 employment agreement according to its plain and ordinary meaning. Since the new employment agreement's express language provides it "is the sole, entire, and complete agreement" and that it "replaces and supersedes all prior versions," we find that the new 2009 employment agreement replaced and superseded the old 2002 employment, intellectual property, and arbitration agreement. Consequently, at the time of Newton's lawsuit in 2020, there was no longer any arbitration agreement in existence between Newton and J&JSV.

In short, J&JSV has failed to show by a preponderance of the evidence (or under any standard of proof) that it had any written agreement with Newton to arbitrate the instant employment dispute. (Code Civ. Proc., § 1281.2.) As the trial court stated, J&JSV did not show "that the 2002 Agreement applies here at all." Thus, we affirm the trial court's denial of J&JSV's motion to compel arbitration.

J&JSV argues the new 2009 employment agreement did not supersede the old 2002 employment agreement "because the scope of the 2009 Agreement was limited to intellectual property matters, . . . not the entirety of the parties' relationship, like the 2002 Agreement." We disagree.

J&JSV's argument appears to wholly disregard the dispositive integration clause. Further, the new 2009 document is revealingly titled an "EMPLOYMENT AGREEMENT." (See *Kec v. Superior Court*, *supra*, 51 Cal.App.5th at p. 978 ["""If a layperson would give the contract language an unambiguous meaning, we apply that meaning"""].) Moreover, while the new 2009 contract does include clauses relating to intellectual property matters, it also includes an at-will employment clause, which an employee may expect to find within the scope of a standard employment agreement.

Finally, we have held that the 2009 employment agreement effectively rendered the 2002 arbitration agreement a nullity. Therefore, the absence of Newton's

signature on the 2002 agreement, as well as any issues related to the viability of JAMS, the arbitration firm designated within the 2002 agreement, are effectively rendered moot.

## III
## DISPOSITION

The trial court's order denying the motion to compel arbitration is affirmed. Costs on appeal are awarded to Newton.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

GOETHALS, J.